**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RANSFORD PERRY,

          Plaintiff,

      -v-                         1:22-CV-1015 (AJB/DJS)

THE UNITED STATES OF AMERICA,

          Defendant.

_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION and ORDER</u>**

On September 27, 2022, plaintiff Ransford Perry ("plaintiff") filed this civil action against defendant United States of America ("defendant") and the United States Postal Service ("Postal Service") pursuant to the Federal Tort Claims Act ("FTCA"). Plaintiff's one-count complaint asserted a claim for negligence based on a slip and fall that plaintiff suffered when he entered a Postal Service building in Albany, New York. Dkt. No. 1.

The matter was initially assigned to U.S. District Judge Mae A. D'Agostino, who referred the case to the assigned magistrate judge for pre-trial supervision. Initially, however, the parties did not need much in the way of oversight: defendant answered the complaint, Dkt. No. 9, the parties stipulated to the dismissal of the Postal Service as a named defendant, Dkt. No. 10, and then they promptly selected a mediator, Dkt. No. 18.

But the case soon ground to a halt. *See, e.g.*, Dkt. No. 21. After receiving a series of extensions to the pre-trial deadlines, Dkt. Nos. 24, 26, 27, plaintiff's counsel moved to withdraw. Dkt. Nos. 28, 29. There, plaintiff's counsel explained that, during the pendency of this litigation, his client had been charged and convicted of a crime and sentenced to a period of imprisonment.

- 1 -

*See* Dkt. No. 28.  Plaintiff's counsel further explained that, aside from the difficulties in communication posed by his client's detention, recent communications with his client had made it "clear that there are irreconcilable differences between the firm and Plaintiff regarding the prosecution of this action."  *Id*. ¶ 9.

On October 8, 2024, U.S. Magistrate Judge Daniel J. Stewart held a telephone conference with plaintiff and his counsel in an attempt to resolve the representation issue.  Dkt. No. 30.  The record shows that the hearing did not go particularly well:

> TEXT ORDER: Plaintiff's counsel filed a Motion with the Court to withdraw from the case.  Dkt. No. 28.  The Court set the matter down for a hearing with Plaintiff and Plaintiff's counsel to discuss the Motion.  The Court made arrangements to communicate with Plaintiff at the facility where he is presently incarcerated.  Upon being connected to the conference, however, the staff in charge of supervising Plaintiff advised the Court that Mr. Perry was maintaining that he was deaf, and therefore could not participate.  At various times during the conference the Court directed questions at the Plaintiff, who generally responded with I can't hear you.  The Court therefore adjourned the conference.

Text Minute Entry at 10/10/24.

After this telephone conference proved unproductive, Judge Stewart took a different tack. He gave plaintiff fourteen days in which to file a letter indicating whether or not he objected to his counsel's withdrawal from the case.  Dkt. No. 31.  He also requested that plaintiff "supply to the Court any documentation which he has to support his claim that he is deaf."  *Id*.

Thereafter, plaintiff indicated that he consented to his counsel's withdrawal.  Dkt. No. 35. Accordingly, Judge Stewart granted the motion to withdraw and *sua sponte* stayed this matter for sixty days to give plaintiff a chance to retain new counsel.  Dkt. No. 36.  The matter was reassigned to this Court but remained referred to Judge Stewart for pre-trial supervision.  Dkt. No. 45.

On January 15, 2025, the sixty-day period expired without the appearance of new counsel on plaintiff's behalf. *See* Dkt. No. 36. Plaintiff, proceeding *pro se*, asked Judge Stewart for more time to gather paperwork related to his case and to try to retain counsel. Dkt. No. 47. Judge Stewart obliged, further extending the discovery deadlines. Dkt. No. 49. Judge Stewart also set a telephone status conference to try to get discovery back on track, but it had to be adjourned due to difficulties connecting with plaintiff. *See* Text Minute Entry at 3/20/25. Judge Stewart re-noticed the telephone status conference for a later date, Dkt. Nos. 52, 53, but the mailing to plaintiff about that conference was returned as undeliverable, Dkt. No. 56.

On May 22, 2025, Judge Stewart held the re-noticed telephone status conference. Plaintiff did not participate, through counsel or otherwise. Text Minute Entry at 5/21/25. There, Judge Stewart learned from defendant's counsel that plaintiff may have been deported as a result of his conviction. *Id*. At that time, Judge Stewart instructed defendant's counsel to locate plaintiff and update the Court. *Id*.

The next day, Judge Stewart issued a text order summarizing his plan to get this litigation moving toward a resolution:

> TEXT ORDER: On May 21, 2025, an on-the-record status confer-
> ence was held telephonically. Defendant's counsel appeared, but
> the *pro se* Plaintiff did not. The Court notes that during a previous
> conference, on October 10, 2024, Plaintiff did not meaningfully par-
> ticipate and maintained, in response to the Court's oral questions,
> that he was deaf. *See* Text Order, Dkt. No. 31. At the most recent
> conference, defense counsel [indicated] that, to his knowledge, the
> Plaintiff had been deported to his home Country of Jamaica. It was
> also noted that efforts of the Defense to conduct discovery have been
> frustrated due to, *inter alia*, Plaintiff[']s failure to provide signed
> medical authorizations. The stay of discovery previously imposed
> is hereby lifted, and the Court extends discovery to June 30, 2025.
> Plaintiff is hereby directed to comply with any outstanding discov-
> ery demands, and to update the docket regarding his present address.
> Plaintiff is specifically warned that his failure to do so can result in
> sanctions being imposed, up to and including, dismissal of the case.

> Defense counsel should utilize his best efforts to attempt to locate the Plaintiff and provide the Court with a status report on or before June 30, 2025.

Dkt. No. 58. The Clerk mailed copies of Judge Stewart's Order to plaintiff's last known addresses, but both mailings soon bounced back as undeliverable in early June. Dkt. Nos. 59, 60.

On June 17, 2025, plaintiff filed a letter requesting a settlement conference with a return address in Jamaica. Dkt. No. 61. In response, defendant filed a status report in which it explained that discovery was incomplete and that defendant could not assess whether a settlement conference would be productive at that time. Dkt. No. 63. Judge Stewart reviewed the parties' filings and set a telephone status conference to discuss the progress of discovery. Dkt. No. 65.

But on the eve of the conference, plaintiff filed a letter in which he claimed that a conference was no longer necessary. Dkt. No. 68. As plaintiff explained, he believed that all of the lawyers involved in this case are guilty of "fraudulent inducement." *Id*. Plaintiff stated that he had filed a claim with the attorney grievance committee seeking their disbarment. *Id*. Thus, in plaintiff's view, there was no reason to respond to any of their requests or to move forward with discovery at this time. *See id*.

Judge Stewart disagreed with plaintiff's view of the situation. In response to plaintiff's request to cancel the conference, Judge Stewart's chambers e-mailed plaintiff at the electronic address included with his most recent physical mailing to advise him that the telephone hearing would in fact occur as scheduled and to warn plaintiff that his attendance was in fact still required.

On August 5, 2025, Judge Stewart held the scheduled teleconference. Plaintiff did not attend the call despite being instructed to do so. Text Minute Entry at 8/5/25. At that time, Judge Stewart discussed the history of the case with defendant's counsel, learned about the outstanding discovery yet to be conducted, and instructed defendant's counsel to attempt to schedule plaintiff's

video deposition via e-mail.  *See id*.  A few days later, Judge Stewart issued a text-only order in a further attempt to get this litigation back on track toward a resolution:

> TEXT ORDER.  The Court set this matter down for a status conference to be held on August 5, 2025.  The *pro se* Plaintiff was notified of the conference.  Prior to the conference taking plaint, Plaintiff wrote a letter to the Court indicating that he was attempting to have all the attorneys in the case disbarred, and that he felt that the Court[']s conference was "no longer necessary."  *See* Dkt. No. 68.  Plaintiff was then notified by email that the conference would continue as scheduled, and that he was required to attend.  A telephone conference was held, but the *pro se* Plaintiff did not appear.  Efforts by Court staff to email him and encourage his appearance were not effective.  At the conference counsel for the Defendant, the United States of America, indicated that they were unable to effectively proceed with their defense because they had not been provided with responses to their discovery demands and, in particular, with medical authorizations that would allow Defendant to obtain the Plaintiff's medical records.  Without that information the Plaintiff's deposition cannot be held.  The Court would note that a previous conference was held with the Plaintiff, and at that time he did not meaningfully participate in the conference.  **In light of the foregoing, the Court hereby Orders that on or before August 29, 2025, Plaintiff shall comply with all outstanding discovery demands and shall supply a duly executed medical authorization to defense counsel.**  In the event that the Plaintiff does not comply with this Court's Order, the Defendant is given permission to file any appropriate motion.  Further, **Plaintiff is given notice that his failure to comply with Court orders, to attend Court ordered conferences, or to actively participate in the discovery process and to provide requested documentation and authorizations, could result in sanctions being imposed, up to and including the dismissal of his claims.**

Dkt. No. 69 (emphases in original).  Plaintiff did not comply with this Order.

On September 11, 2025, defendant's counsel e-mailed plaintiff a notice that his deposition was scheduled to be conducted by videoconference at 10:00 a.m. EST on September 24, 2025.  Ex. A to Ransom Decl., Dkt. No. 73-3.  This notice requested that plaintiff confirm his attendance no later than September 22, 2025.  *Id*.  This notice further warned that the deposition would be

cancelled if plaintiff failed to confirm his planned participation. *Id*. Plaintiff did not respond to this notice and his deposition was cancelled. Ransom Decl., Dkt. No. 73-2 ¶ 4.

On November 17, 2025, this Court entered a text-only order noting that all pre-trial deadlines in this case have expired and directing the parties to file a status report. Dkt. No. 70. In response, defendant's counsel filed a status report noting that he had been furloughed during the recent government shutdown but requested that the dispositive motion deadline be reset to December 15, 2025. Dkt. No. 71. Judge Stewart reset the deadline accordingly. Dkt. No. 72.

On December 15, 2025, defendant moved to dismiss this action based on plaintiff's failure to prosecute this action or to comply with various court orders. Dkt. No. 73. The same day, plaintiff took advantage of the electronic filing portal ("MFT") to file a motion "to stay deposition pending order to confirm fraudulent inducement." Dkt. No. 74. The motions have been fully briefed, Dkt. Nos. 82, 85, and plaintiff has since used MFT to submit a host of additional filings, Dkt. Nos. 77, 87, 88, 89, 90, 91, 94, 95.[1]

Under Rule 41 of the Federal Rules of Civil Procedure, a trial court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal or Local Rules] or a court order." FED. R. CIV. P. 41(b); *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (explaining that Rule 41(b)'s reference to "these rules" includes both the Federal Rules of Civil Procedure and a judicial district's local rules of practice).

Of course, the outright dismissal of a case is a "harsh remedy to be utilized only in extreme situations," *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004), and

---

[1] Plaintiff has repeatedly complained that he was misled into dismissing the Postal Service from this action, insisting that it is a proper defendant for an FTCA claim. Plaintiff is wrong—the only proper defendant in an FTCA case is the United States of America.

courts should be particularly hesitant to dismiss a *pro se* litigant's case for simple procedural deficiencies, *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).

Even so, the authority to dismiss an action that a litigant—even a *pro se* one—has failed to prosecute "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp. v. Loews Corp.*, 683 F.3d 37, 42 (2d Cir. 1982).

To determine whether dismissal instead of some lesser sanction is warranted, a district court must weigh five factors:

> (1) whether the plaintiff "caused a delay of significant duration";
>
> (2) whether the plaintiff was "given notice that further delay would result in dismissal";
>
> (3) whether the defendant was "likely to be prejudiced by further delay";
>
> (4) whether dismissal would balance "the need to alleviate court calendar congestion . . . against [the] plaintiff's right to an opportunity for a day in court"; and
>
> (5) whether lesser sanctions would be effective.

*Drake*, 375 F.3d at 254. "No single factor is generally dispositive." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (per curiam).

Upon review, defendant's motion to dismiss must be granted. First, plaintiff has caused a significant delay. A review of the docket report shows that plaintiff has been *pro se* in this action since at least November 15, 2024, when Judge Stewart granted counsel's request to withdraw. Dkt. No. 36. Thereafter, plaintiff failed to appear at a telephone status conference with Judge Stewart in March of 2025 and again in May of 2025. This was due, at least in part, to plaintiff's

ongoing failure to update his mailing address in accordance with the Local Rules, which caused several court notices to be returned as undeliverable. Dkt. No. 56.

As a result of plaintiff's continued failure to promptly update his address in accordance with the Local Rules, he also failed to comply with Judge Stewart's May 22, 2025 Order directing him to respond to any outstanding discovery demands and to update his mailing address on file. Dkt. Nos. 59, 60. Further, after plaintiff filed a letter requesting a settlement conference, he failed or refused to attend the telephone discovery conference that Judge Stewart set in response to that request, claiming that he believed a conference was unnecessary because of fraud. Dkt. No. 68.

Thereafter, due in part to both his failure to attend that most recent conference and his ongoing failure to update his address, he also failed to comply with Judge Stewart's August 11, 2025 Order, which directed him—again—to respond to any outstanding discovery demands and to update his mailing address on file. Dkt. No. 69. Ultimately, after an attempt to schedule plaintiff's video deposition by e-mail failed in early September, defendant finally filed this motion to dismiss on December 15, 2025. Dkt. No. 73.

This amounts to over a year of delay, and virtually all of it is attributable to plaintiff's litigation conduct. While short delays generally do not weigh in favor of dismissal, our Local Rules recognize that a delay of four months is "presumptive evidence of lack of prosecution," N.D.N.Y. L.R. 41.2(a), and courts regularly find that this factor weighs in favor of dismissal where the delay stretches beyond a few months, *See, e.g.*, *Rouse v. Transworld Sys., Inc.*, 811 F. Supp. 3d 400, 406 (E.D.N.Y. 2025) (collecting cases).

Second, plaintiff has been given ample notice and warning that continued delay would result in dismissal. As noted *supra*, Judge Stewart repeatedly warned plaintiff that his failure to participate in this action would justify its dismissal for a failure to prosecute. Although the record

reflects that several of these filings were returned as undeliverable, our Local Rules make clear that plaintiff is obligated to promptly notify the Court of any change in address.  Courts have repeatedly held that, under these circumstances, any "responsibility for that miscommunication" lies with the litigant.  *See, e.g.*, *Sessoms ex rel. V.C. v. Comm'r of Soc. Sec.*, 2022 WL 511646, at *2 (E.D.N.Y. Feb. 21, 2022) (collecting cases).

Further, as explained *supra*, plaintiff repeatedly refused to participate in scheduled status conferences, and in one instance refused to attend even after Judge Stewart's chambers made clear by e-mail that his participation was required.  In addition, the fact that plaintiff filed a motion to stay his deposition via MFT on the exact same day that defendant finally moved to dismiss *strongly* suggests that plaintiff had the ability to access and review filings in this litigation.

In short, plaintiff's repeated failure to follow various court orders leads to the conclusion that this unreasonable delay is chargeable to him, not to the Court or to defendant.  *See Rubin v. Abbott Lab'ys*, 319 F.R.D. 118, 121 (S.D.N.Y. 2016) ("All litigants are responsible for keeping the Court apprised of any changes to their notice address and to the status of their representation, so that orders, notices and other court documents can reach them.").

Third, defendant is likely to be prejudiced by further delay, which has already stretched beyond one year.  Courts generally presume that the defendant is likely to suffer prejudice when, as here, plaintiff has caused an "unreasonable delay."  *LeSane*, 239 F.3d at 209; *Lyell Theatre Corp.*, 682 F.2d at 43 ("Prejudice to defendants resulting from unreasonable delay may be presumed.").  That conclusion is especially appropriate in this case, where plaintiff has refused to participate in telephone status conferences, produce discovery, or attend his video deposition.

Fourth, the need to alleviate calendar congestion and move cases toward trial outweighs plaintiff's right to receive a further chance to be heard in this case.  "Courts in this district have

held that calendar congestion outweighed a plaintiff's opportunity to be heard when the plaintiff has rebuffed opportunities to be heard." *Rubin*, 319 F.R.D. at 121 (collecting cases). That is exactly what happened here—plaintiff has refused to participate in the discovery process and has failed to communicate with the Court unless it suits him (such as to demand a settlement conference or to seek to stay his deposition). In short, it is entirely appropriate to involuntarily dismiss a civil case that stalled out over a year ago because of plaintiff's repeated and uninterrupted failure to respond to, much less comply with, court orders.

Fifth and finally, lesser sanctions would be completely effective. Plaintiff has been deported and has complained about his financial condition, which means he almost certainly cannot afford any kind of monetary sanction (conditional, nominal, or otherwise). Even more importantly, plaintiff has been unresponsive in this matter, snubbing Judge Stewart's directives to participate in discovery conferences and failing to update his mailing address. *See Rouse*, 811 F. Supp. 3d at 409 ("Of additional concern to the Court is that any lesser sanction would not be effective because the non-responsive Plaintiff would be unaware that such a sanction had been applied.").

There is no indication under these circumstances that a lesser sanction than dismissal (that would necessarily come in the form of a further court order) would prompt compliance. Accordingly, even accounting for plaintiff's unrepresented status, the relevant factors weigh strongly in favor of dismissal with prejudice for a failure to prosecute or to comply with court orders.

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 73) is GRANTED; and

2. Plaintiff's motion to stay his deposition (Dkt. No. 74) is DENIED as moot.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:  April 23, 2026
         Utica, New York.

Anthony J. Brindisi
U.S. District Judge